UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENISE ZIDLICK., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-1433-TWP-DKL |
| ) | |
| KOHL'S INDIANA, INC., ) | |
| KOHL'S DEPARTMENT STORES, INC., ) | |
| KOHL'S INDIANA, LP, and ) | |
| KOHL'S CORPORATION, d/b/a KOHL'S ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants Kohl's Department Stores, Inc. d/b/a KOHL's ("Kohl's") Motion for Summary Judgment (Dkt. 29). Plaintiff Denise Zidlick ("Ms. Zidlick") filed an action against Kohl's for false imprisonment, conversion, defamation, and malicious prosecution, after criminal charges of theft were filed against her and then dismissed. For the reasons explained in this Entry, Kohl's Motion is **GRANTED in part** and **DENIED in part.**

**I. BACKGROUND**

At 8:00 p.m. on January 12, 2011, Ms. Zidlick entered a Kohl's store located in Noblesville, Indiana with the intent to do some shopping and to return or exchange some items. Ms. Zidlick's shopping was captured on the store's security video tape, which Ms. Zidlick has viewed and verified. Dkt. 30-1 at 13. At 8:38 p.m., Ms. Zidlick can be seen on video picking up four pairs of jeans in the juniors department. Ms. Zidlick placed the jeans in the back section of her shopping cart where she also had a gray Kohl's shopping bag and a pink gift bag which she

brought with her when she entered the store. At 8:46 p.m., Ms. Zidlick passed under a security camera with her shopping cart in plain view. The video shows several pairs of jeans in the back section of her cart, some inside the gray Kohl's bag. After shopping for approximately thirty to forty-five minutes in multiple departments of the store, Ms. Zidlick approached the service desk. Ms. Zidlick described the remainder of her visit to Kohl's as follows:

> When I got to the return center, when I went up there I told her I had some exchanges and some returns, took them out of my cart, my bag, asked her if she could scan the other items that I had, I wasn't sure if they had come from Kohl's, I didn't have receipts for those specific items.
>
> I looked in my wallet for the receipts for the toy, the jeans, and they weren't in my wallet so I knew that they had to be at home. I told her I didn't have the receipts, that they were at home. She said it would be no problem, she could give me in-store credit, I said that's fine. She rang them up.
>
> I knew what we had paid for the toy so we did that one with the card from the toy purchase. She thought I purchased a pair of jeans, the others were on the in-store credit card, I don't remember what the value was, it was never returned to me, still in Kohl's possession.
>
> When I was done at the return desk, went to the front of the store, get my stuff out of the cart and Mr. Jackson, the security officer, stopped me and took me to his office, questioned me, detained and questioned me, and they made me sign some electronic thing that they couldn't print me off on paper and then they escorted me out the door.

Dkt. 30-1 at 6. Following a period of questioning, Ms. Zidlick was accused of shoplifting by the store's loss prevention officer, Cameron Jackson ("Mr. Jackson"). While in his office, Mr. Jackson called the police and during the call, referred to Ms. Zidlick as a "detained shoplifter." Dkt. 40-2 at 26. Around 9:30 p.m., Ms. Zidlick was issued a Warning Notice while in the custody of the Noblesville Police Department and a Kohl's representative. Later, around 10:20 p.m., Ms. Zidlick was told to sign a "Kohl's No Trespass Agreement" prior to leaving the property. Ms. Zidlick signed the agreement. Officer Chris Macy of the Noblesville Police Department prepared a report of the incident which became part of the Noblesville Police

Department Record Number 11-000149 ("Police Record"). The Police Record noted the case was being forwarded to the prosecutor's office for possible charges.

In February 2011, Ms. Zidlick was charged with theft pursuant to Indiana Code §35-43-4-2(a). An Order Finding Probable Cause and an Order to issue a warrant for Ms. Zidlick's arrest were entered. On February 23, 2011, a warrant was issued by the Clerk of the Hamilton Superior Court for Ms. Zidlick's arrest. On February 28, 2011, Ms. Zidlick turned herself in with the assistance of counsel. The criminal charges were later dismissed a few days prior to the scheduled trial date.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). Finally, "neither the mere existence of some alleged

3

factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. DISCUSSION

**A.     Ms. Zidlick's Defamation Claim is Barred by Qualified Privilege**

"To prevail on a cause of action for defamation, a plaintiff must prove four elements: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages." *Newman v. Jewish Cmty. Ctr. Ass'n of Indianapolis, Inc.*, 875 N.E.2d 729, 739 (Ind. Ct. App. 2007). A communication is defamatory *per se* if it imputes criminal conduct. *Id.* In instances where the public interest in "encourag[ing] private citizens and victims not only to report crime, but also to assist law enforcement with investigating and apprehending individuals who engage in criminal activity" exists, there is a qualified privilege that acts as a defense against defamation. *Williams v. Tharp*, 914 N.E.2d 756, 762 (Ind. 2009) (*Kelley v. Tanoos,* 865 N.E.2d 593, 601 (Ind. 2007)). The privilege "'applies to communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.'" *Id.* (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)). However, "the defense of qualified privilege does not change the actionable quality of the words published, but rebuts the inference of malice that is otherwise imputed." *Id.* When asserting the qualified privilege, the defendant bears the burden of establishing the existence of a privileged occasion for the publication. *Id.* If the defense is established, the burden shifts to the plaintiff to show the privilege was abused. *Id.*

4

Ms. Zidlick's claim of defamation is based on Mr. Jackson's report and statement to Noblesville City police that he had in his custody a "detained shoplifter" and as a result of Mr. Jackson's statements, she was arrested. Kohl's contends there is no factual dispute that Mr. Jackson, even if he was mistaken about Ms. Zidlick's activities, believed his statements were true and he had a good faith basis for that belief. Communications made to law enforcement reporting criminal activity are qualifiedly privileged even if a report is erroneous because of the compelling public interest in encouraging citizens to report suspected wrongdoing. *Tharp*, 934 N.E.2d at 1209 (citing *Kelley*, 865 N.E.2d at 600). Therefore, Kohl's argues the emphasis should not be on the factual accuracy of the Kohl's associate's statements; rather, the emphasis should be placed on whether the Kohl's associate's statements were made with belief or grounds for belief in the truth of the statements. *See Kelley*, 865 N.E.2d at 602. Ms. Zidlick disputes the loss prevention officer's good faith belief, arguing that he "quickly and without reasonable basis" detained and labeled her as a shoplifter. Dkt. 39 at 13. Specifically, she argues that Mr. Jackson's statements made after Ms. Zidlick was detained, such as "I'm never going to do this again," and "Man, this is a big headache," (Dkt. 39 at 13) show bad faith. However, these statements do not indicate that Mr. Jackson did not believe Ms. Zidlick was a shoplifter at the time he made his report to law enforcement. The Court finds there is no dispute that Mr. Jackson, believed in good faith the truth of his statements. Thus, the report to law enforcement officers was a qualified privileged communication.

Once it has been established that a communication is privileged, the burden shifts to the plaintiff to overcome the privilege by showing that it was abused. *Bals*, 600 N.E.2d at 1356. The concept of "abuse" relates to the speaker's "abuse of the privileged occasion by going beyond the scope of the purposes for which the privilege exists." *Williams*, 914 N.E.2d at 762

(quoting *Holcomb*, 858 N.E.2d at 106–07). A communication can lose its privileged status upon a showing by the plaintiff that: "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.* at 763-64 (quoting *Bals*, 600 N.E.2d at 1356). Ms. Zidlick has not produced any evidence establishing that the police report itself was an abuse of the privilege, but only argues that the statement was made in bad faith. The Court will not scour the record in search of evidence to defeat a motion for summary judgment, and finds no evidence that the privilege was abused.

Even assuming *arguendo* that Ms. Zidlick could establish the privilege was abused, her defamation claim would fail as she cannot establish the malice element of a defamation claim. A person alleging defamation is required to show the communication was made with actual malice. *Kitco, Inc. v. Corp. for General Trade,* 706 N.E.2d 581, 588 (Ind.Ct.App.1999). Actual malice occurs where a "defamatory falsehood was published with knowledge of its falsity or with reckless disregard of whether it was false." *Id.* Ms. Zidlick argues that it is a question of fact whether Mr. Jackson had a good faith basis for his statements to law enforcement in part because he testified that "this was his first return fraud case" and that night, he "didn't really know about how to handle it in the right way…", "it became confusing that night" and "…I stuck with it and I didn't really want to back off of it and I just stayed with it". (Dkt. 39 at 13.) The Court is not persuaded. If anything, the statements made by Mr. Jackson evidence that he was inexperienced and perhaps negligent, however there is no evidence of ill will or reckless disregard. The Court finds this evidence insufficient to establish that Mr. Jackson acted with actual malice. Accordingly, Kohl's Motion for Summary Judgment on Ms. Zidlick's defamation claim is **GRANTED**.

**B.     Ms. Zidlick's Claims of Malicious Prosecution and False Imprisonment are barred by the Indiana Detention of Shoplifters Act**

The Indiana Detention of Shoplifters Act states that, "A civil or criminal action against an owner or agent of a store . . . may not be based on a detention that was lawful," I.C. § 35-33-6-4, when the owner or agent "has probable cause to believe that a theft has occurred or is occurring on or about the store and who has probable cause to believe that a specific person has committed or is committing the theft." I.C. § 35-33-6-2. "The defendant has the burden of proof that the defendant acted with probable cause . . . ." I.C. § 35-33-6-4.

Probable cause for an arrest exists if an officer reasonably believes, in light of the facts and circumstances within his knowledge at the time of the arrest, that the suspect has committed, or is committing, an offense. *Thompson v. Wagner*, 319 F.3d 931, 934 (7th Cir. 2003); *Neiman v. Keane*, 232 F.3d 577, 580 (7th Cir. 2000). Whether probable cause exists generally is a jury question; however, "when there is no room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them," a court may decide the issue. *Neiman*, 232 F.3d at 580 (quoting *Booker v. Ward*, 94 F.3d 1052, 1058 (7th Cir. 1996)).

**1.     Malicious Prosecution and False Imprisonment Claims**

A claim of malicious prosecution rests on the notion that the plaintiff has been improperly subjected to legal process. *Crosson v. Berry*, 829 N.E.2d 184, 189 (Ind. Ct. App. 2005) (citing *City of New Haven v. Reichhart*, 748 N.E.2d 374, 378 (Ind. 2001)). "The elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor." *Id.* The tort of false imprisonment involves an unlawful restraint upon one's

7

freedom of locomotion or the deprivation of liberty of another without consent. *Dietz v. Finlay Fine Jewelry Corp.*, 754 N.E.2d 958, 967 (Ind. Ct. App. 2001).

In Indiana, "a judicial determination of probable cause in a criminal proceeding constitutes *prima facie* evidence of probable cause in a subsequent civil lawsuit alleging malicious prosecution." *Glass v. Trump Ind., Inc.*, 802 N.E.2d 461, 467 (Ind. Ct. App. 2004) (citing *Conwell v. Beatty*, 667 N.E.2d 768 (Ind. Ct. App. 1996)); *Swanson v. Horseshoe Hammond, LLC*, 445 Fed. Appx. 868, 870 (7th Cir. 2011). The same standard applies in actions for false imprisonment. *See Street v. Shoe Carnival*, 660 N.E.2d 1054 (Ind. Ct. App. 1996). However, the plaintiff can rebut a *prima facie* case of probable cause by introducing evidence that the finding of probable cause was induced by false testimony, fraud, or other improper means. *Glass*, 802 N.E.2d at 467. Probable cause to initiate a criminal proceeding exists if a reasonably prudent and intelligent person could conclude after reasonable inquiry that the suspect committed a crime. *Id.*; *Swanson*, 445 Fed. Appx. at 870.

Ms. Zidlick argues that a jury could reasonably determine that probable cause did not in fact exist in her case. Ms. Zidlick relies on *Street v. Shoe Carnival*. In *Street*, the plaintiff sued Shoe Carnival and the loss prevention manager for false imprisonment after she was arrested for shoplifting. While shopping at Shoe Carnival, the plaintiff placed shoes on a stroller and as "she found other shoes more appealing, she would exchange the other shoes she had chosen previously." *Street*, 660 N.E.2d at 1056. The plaintiff also put merchandise in her pocket and continued to shop at the front of the store, beyond the cash register. At that point, the loss prevention manager confronted and restrained the plaintiff, took her to his office, and accused her of shoplifting. The State subsequently filed criminal charges based upon a report the loss prevention manager submitted to the authorities. Relying on the report, a trial judge found

probable cause existed to detain the plaintiff. However, the criminal charges were later dismissed at the State's request because of witness unavailability. *Id.* at 1057.

In the subsequent suit against it for false imprisonment, Shoe Carnival argued that the judicial determination of probable cause in the criminal action constituted *prima facie* evidence of probable cause in the subsequent civil action, thus barring plaintiff's claim. *Id*. at 1057. The Indiana Court of Appeals noted that in addition to rebutting probable cause with evidence of fraud, "[a]ll that can be required on trial is the exhibition of such a state of facts as will fairly rebut and overcome this finding in the minds of the jury." *Id.* at 1058 (quoting *Louisville, New Albany, and Chi. Railway Co. v. Hendricks*, 40 N.E. 82 (Ind. Ct. App. 1895)). The court held that taking the facts most favorable to the plaintiff, a reasonable jury could determine there was not probable cause for detention because the store's set-up encouraged patrons to shop beyond the cash register. *Id.* at 1057.

Ms. Zidlick relies on the factual similarities between her case and *Street*, but the Court finds *Glass* is the more binding authority. In *Glass*, decided eight years after *Street*, the Indiana Court of Appeals stated that, "When a judicial determination of probable cause has been made, the prima facie case cannot be overcome by a showing of a negligent failure to investigate thoroughly where there is some factual basis for bringing a claim. More than mere negligence must be shown to rebut the prima facie case." *Glass*, 802 N.E.2d at 467 (quoting *Conwell*, 667 N.E.2d at 778). Ms. Zidlick's claim is not like the plaintiff's in *Street*, where the facts supported a reasonable interpretation rebutting probable cause for the detention. Instead, in this case there was some factual basis for bringing the claim against Ms. Zidlick and she cannot establish that the Kohl's loss prevention officer had no probable cause when he detained her. The undisputed facts, even taken in the light most favorable to Ms. Zidlick, support Mr. Jackson's actions. Ms.

9

Zidlick was videotaped taking merchandise and placing it in her shopping cart. The cart later is seen in full view and there is merchandise inside the Kohl's shopping bag. Ms. Zidlick then made several returns. While it is arguable that some negligence may have taken place which led to Ms. Zidlick's arrest and prosecution, this is not enough to establish malicious prosecution. "The plaintiff may rebut such a prima facie case of probable cause by introducing evidence that shows the finding of probable cause was induced by false testimony, fraud, or other improper means such as the defendant withholding material facts at the hearing." *Conwell v Beatty*, 667 N.E.2d 768. "When a judicial determination of probable cause has been made, the prima facie case cannot be overcome by a showing of a negligent failure to investigate thoroughly where there is some factual basis for bringing a claim. More than mere negligence must be shown to rebut the prima facie case." *Id.* at 778.

Moreover, Kohl's detention of Ms. Zidlick was not unlawful, thus defeating her claim of false imprisonment. Therefore, Kohl's Motion for Summary Judgment against Ms. Zidlick's claim of malicious prosecution and false imprisonment is **GRANTED**.

2. **Conversion Claim**

"A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." I.C. § 35-43-4-3. "A person's conduct is knowingly when he is aware of a high probability that he is doing so." I.C. § 35-41-2-2(b). Ms. Zidlick claims that Kohl's confiscated and kept property which belonged to her. Kohl's argues that it did not intentionally or knowingly exert unauthorized control over Ms. Zidlick's property, because it reasonably believed the merchandise was stolen. However, Ms. Zidlick argues that even after charges were dropped Kohl's has failed to return her property. Kohl's has not addressed this point and the Court cannot decide as a matter of law that conversion has not

occurred. Therefore, Kohl's Motion for Summary Judgment against Ms. Zidlick's claim of conversion is **DENIED**.

## IV. CONCLUSION

For the reasons set forth above, Kohl's Motion for Summary Judgment (Dkt. 29) is **GRANTED in part** and **DENIED in part**. Specifically, Kohl's Motion regarding Ms. Zidlick's defamation, malicious prosecution, and false imprisonment claims is **GRANTED**. Kohl's Motion regarding Ms. Zidlick's conversion claim is **DENIED**.

SO ORDERED.        01/11/2013

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alexander Phillip Pinegar
CHURCH CHURCH HITTLE & ANTRIM
apinegar@cchalaw.com

Jack G. Hittle
CHURCH CHURCH HITTLE & ANTRIM
hittle@cchalaw.com

Miriam A. Rich
HILL FULWIDER MCDOWELL FUNK & MATTHEWS
miriam@hfmfm.com